JOSEPH HAYWARD, Respondent v. THE GRAHAM BOOK & STATIONERY COMPANY, Appellants.

### Kansas City Court of Appeals, November 19, 1894.

1. **Assignments**: APPEAL BY CREDITORS: STATUTE. The creditors of an assignor have the right of appeal, not only from the judgment of the assignee in allowing a demand against the assigned estate, but also from the judgment of the circuit court making an allowance, as they are parties in interest under section4 63, Revised Statutes, 1889; and section 448 is not in conflict with this view.

2. **Appellate Practice**: TRIAL BEFORE COURT: INSTRUCTIONS. The appellate court only looks to instructions where the trial has been before the court, without a jury, to see upon what theory of law the court has disposed of the case.

3. **Corporations**: BORROWING MONEY. A trading corporation will be presumed to have the power through its proper officer to borrow money for use in the transaction of its business and to execute notes therefor.

4. ———: ———: DE FACTO OFFICER: RATIFICATION. Where a person has bought about all the stock of a corporation and has been installed as manager of the business with the understanding that the name should be changed and he elected president, which was done in a few days, and borrows money and executes a note in the new name of the corporation and the interest of said note is paid semiannually to the knowledge of the corporation, such note becomes the binding obligation of the corporation.

5. ———: MISAPPLICATION OF BORROWED MONEY: SCIENTER. The fact that such *de facto* officer used the borrowed money in part payment of stock which he had purchased of the former stockholders, will not defeat a note given for such borrowed money where there is no complicity on the payee's part.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*Stauber & Crandall* for appellants.

(1) It is not the law, if all the facts stated in said instruction were shown, that the corporation would be bound, or a liability created against it, when the facts show that the money never went into the corporation, but for the sole and private use of Graham, and never ratified. *Windson v. Bank,* 18 Mo. App. 665; *Savings Ass'n v. Printing Co.,* 25 Mo. App. 642. The creditors can show that this note is void and does not bind the corporation and not a liability. *Hyde v. Larkin,* 35 Mo. App. 365. (2) Instruction number 2 is wrong, because it states the law to be that if interest was paid, and "the officers knew it, or might have known of same had they been reasonably attentive to the business of the corporation," etc., it was a ratification. This is not the law. *Windson v. Bank, supra; Hyde v. Larkin, supra.*

*Spencer & Mosman* for respondent.

(1) Respondent contends that, under the law of this state, a creditor is not authorized to appeal from the decision of the circuit court allowing the claim of another creditor, as a demand against the assigned estate. R. S. 1889, sec. 448; see Acts of 1891, p. 70. The statute (sec. 446) expressly allows a creditor to appeal from the allowance of a demand by the assignees to the circuit court, but it makes no provision authorizing an appeal after the case has been decided by the circuit court and the act of 1890 governs. (2) The president of the Graham Book and Stationery Company was authorized by said company to borrow money on its behalf. *Rockwell v. Elkhorn,* 13 Wis. 653; *Preston v. Lead Co.,* 51 Mo. 45; 4 Am. and Eng. Encyclopedia of Law, 222; *Railroad v. Howard,* 7 Wall. 412;

Morawetz on Corp., sec. 342; *Henning v. Ins. Co.*, 47 Mo. 425; *Holt v. Simmons*, 16 Mo. App. 111; *Spark v. Transportation Co.*, 104 Mo. 54. (3) Under the contract entered into by Graham with all of the stockholders of the company, for the purchase of the compay's stock, it was expressly agreed that Graham should be the president of the corporation and it is entirely immaterial whether the formal step required by law to make him president had been taken or not. He was, by agreement of the shareholders, *de facto* president of the corporation. The possession of the stock of goods was delivered to him and he had entered upon his duties as such. *Barbaro v. Occidental Grove*, 4 Mo. App. 429. Again, said agreement made said Graham the manager of the store and business, and at the time he borrowed the money he was in charge of the store. The above quoted by-law gave to the manager the power to borrow money. Respondent Hayward had the right to presume that Graham "was acting in the regular course of the authorized business of the company," and he was entitled to rely on the statement of said Graham as president of the company, when he applied to plaintiff for the loan on its behalf. There was not a single suspicious circumstance to attract his attention in the transaction and "where one of two innocent persons must suffer for the wrongful act of another, he must suffer who places the party doing wrong in a position to do it." *Neuhoff v. O'Reilly*, 93 Mo. 164; *Lungstrass v. Ins. Co.*, 57 Mo. 107; *Mapes v. Robinson*, 93 Mo. 114.

ELLISON, J.—The Graham Book and Stationery Company was a trading corporation engaged at the city of St. Joseph in the mercantile business. Some time in the year 1893, the corporation made an assignment for the benefit of its creditors, George Crowther,

Esq., being made the assignee. In due course a note to plaintiff for $1,000, the subject of the present controversy, was presented to the assignee for allowance and by him allowed. The other creditors, or a portion of them, appealed to the circuit court where the note was again allowed and the creditors have appealed to this court.

The facts necessary to state for an understanding of the points involved in the record, are that this corporation existed prior to July 6, 1891, as the Whimple & Gilpin Company; that about that day the name of the corporation was changed to the Graham Book and Stationery Company and under the latter name is alleged to have executed the note aforesaid. On July 1, 1891, near a week before the formal change of name, H. L. Graham bought out about all the stock from the stockholders of the corporation known as the Whimple & Gilpin Company, and the store and business, together with its management, was turned over to Graham; it being understood that he was manage and control it, and was, as soon as practicable, to be elected president, and he was so elected on July 6, aforesaid. There is evidence tending to show that on said July 1, after taking charge of the store and its management, he borrowed money of plaintiff and executed the note in the name of the Graham Book and Stationery Company. That he borrowed the money for the corporation, receiving plaintiff's check payable to the corporation. The evidence further shows that three several semiannual payments of interest were made by the corporation and indorsed upon the note.

Plaintiff makes the preliminary point that these creditors with claims allowed, while they may appeal from the assignee to the circuit court, have no right under the statute to appeal from the circuit court to the appellate courts. We think they have that right.

Section 463, Revised Statutes, 1889, declares that exceptions and appeals may be had in any proceeding under the chapter of assignments "by any party in interest to the proceedings." Creditors, the amount of whose claims will be affected by allowances, are certainly parties in interest and are covered by the statute referred to. Section 448, is not in conflict with this.

Much criticism is made by appellants as to certain assumptions of fact contained in the instructions. But as the cause was tried by the court without a jury these criticisms are of little avail since we only look to the instructions in such cases to see upon what theory of law the court has disposed of the case. The legal propositions involved in the instructions given for plaintiff we believe to be correct.

The corporation being a trading concern, will be presumed to have the power, through its proper officers, to borrow money for use in the transaction of its business and for this purpose to execute notes for the sums borrowed. But in addition to this, it was shown by the introduction of a by-law of the company that the officers named had the power to borrow money. The by-law is as follows: "Article 13. The president, secretary and manager shall not borrow money for corporation to exceed the amount fixed by the directors, provided, the directors see fit to limit them." We interpret this to mean that, unless and until the directory limited the power, it could be exercised.

One of the chief objections made by appellants to the plaintiff's case is that when this money was borrowed, July 1, 1891, Graham was not an officer of the company and, indeed, that no such company was in existence. It is true that the corporation had not formally changed its name. It is likewise true that Graham had not been elected president. But, as already stated, it was shown that the change in the

corporation had taken place and that Graham was installed as manager of the business, all with the understanding that the name would be changed and Graham elected president, which was done a few days afterward. But it was shown that the stockholders holding the main body of the stock, and some of whom were yet the directors of the corporation, retained the stock in their names. This, however, can not affect the result, since such stockholders had in fact sold to the new management, and, as was shown, they only retained stock in their names as security for the sum they were to be paid. The essential fact remains that Graham was the manager of the business and that he borrowed the money of plaintiff for the corporation and executed the note to plaintiff in the name of the corporation as agreed upon. The name was formally changed and the corporation paid installments of interest on the note. So, if it should be conceded that the act of Graham in executing the note on July 1, in the name of and for the Graham Book and Stationery Company, was at that time an unauthorized act, yet the fact that after the corporation formally assumed that name and formally elected Graham president, it recognized the note as a subsisting obligation by failing to disavow it and by paying the interest as before stated.

It ought, in fairness to appellants, to be further stated, that there was evidence tending to show that Graham used the money borrowed of plaintiff in part payment of the stock which he purchased of the former stockholders, but it is not shown that plaintiff had any other knowledge of the use of the money than that he loaned it to the corporation and for the corporation. We have not discovered any evidence, either in that heard by the court or that offered and excluded which tended to show any complicity on plaintiff's part in an improper use of the money.

After an examination of the entire record we have arrived at the conclusion that the judgment was for the right party and that no error materially affecting the merits of the controversy has been committed.

The judgment will, therefore, be affirmed. All concur.